**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY (PEER)
2000 P Street, NW, Suite 240
Washington, DC 20036

       Plaintiff,

       v.                                     Civil Action No.

UNITED STATES ARMY CORPS
OF ENGINEERS (USACE)
Vicksburg District
4155 Clay Street
Vicksburg, MS 39183

       Defendant.

## <u>COMPLAINT</u>

<u>PRELIMINARY STATEMENT</u>

1.  This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as

amended, to compel the United States Army Corps of Engineers ("USACE") to grant Plaintiff's

FOIA fee waiver request and to disclose documents withheld based USACE's improper denial of

Plaintiff's request for a fee waiver.  FOIA requires that federal agencies respond to public

requests for documents, including files maintained electronically, in order to increase public

understanding of the workings of government and access to government information.  FOIA also

requires that FOIA fees be waived or reduced if disclosure of the requested information is in the

public interest and is not primarily in the commercial interest of the requester.  5 U.S.C. §

552(a)(4)(A)(iii).

2.  Plaintiff Public Employees for Environmental Responsibility ("PEER") is a non-profit organization with tax-exempt status dedicated to research and public education concerning the activities and operations of the federal government.  Plaintiff requested records concerning Hurricane Katrina recovery efforts in Mississippi overseen by the USACE; in particular, compliance with safety and contractual requirements by Corps contractors and subcontractors, Corps compliance with the requirements of the Federal Water Pollution Control Act of 1972 (Clean Water Act), and potentially retaliatory action taken against an employee who raised safety and environmental concerns to his superiors.

3.  Disclosure of the requested information is in the public interest, particularly citizens of the Gulf Coast area, because the environmental and safety concerns caused by Hurricane Katrina have a significant impact on those citizens.  The public as a whole would also benefit from the requested disclosure by gaining insight into governmental responses to natural disasters.  This information may be useful for other emergency situations.  The requested information may also elucidate whether retaliatory action was taken against Mr. Michael Daily for voicing his concerns with the recovery effort.  Disclosure of this information is in the public interest because retaliation against government employees for attempting to implement environmental and safety protocols is in direct conflict with the public's safety and interest.

4.  By letter dated March 7, 2007, Plaintiff submitted a FOIA request (Attachment 1 hereto), including a fee waiver request, to USACE, which designated it FOIA Request No. 07-23.  By letter dated April 2, 2007 (Attachment 2 hereto), USACE acknowledged receipt of Plaintiff's FOIA request and denied Plaintiff's request for a fee waiver.  Despite denying the fee waiver, USACE enclosed three (3) documents regarding a smoldering mulch pile incident in an attempt

to show, as the April 2, 2007 letter claimed, that the incident "did not have any environmental impacts and was of no significant interest to the general population." The smoldering mulch pile incident in question was the subject of only a portion of Plaintiff's FOIA request.

5. In the April 2, 2007 letter, USACE deemed PEER a "commercial" user responsible for search, review and duplication costs. The letter stated that "a full search of the documents in your FOIA request would be a considerable effort[,]" and added that it would pursue the request only if PEER would pay the impliedly significant costs incurred.

6. In a detailed letter dated June 1, 2007 (Attachment 3 hereto), Plaintiff appealed USACE's fee waiver denial. USACE acknowledged receipt of this appeal by letter dated June 22, 2007. Over one year has passed and there has been no further communication from USACE regarding the appeal and no further production of documents responsive to Plaintiff's FOIA Request No. 07-23. PEER treats this failure to respond as a constructive denial of its fee waiver request and thus its FOIA request as well.

<u>JURISDICTION AND VENUE</u>

7. This Court has jurisdiction over this action pursuant to 5 U.S.C. §552(a)(4)(B). This Court also has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

9. This Court has the authority to award costs and attorney's fees under 28 U.S.C. § 2414 and 5 U.S.C. §552(a)(4)(E).

10.  Venue is properly vested in this Court under 5 U.S.C. § 552(a)(4)(B) because the Plaintiff resides and has its principal place of business in this district.

<u>PARTIES</u>

11.  Plaintiff PEER is a non-profit public interest organization, with its main office located in Washington, D.C., and field offices located in California, Colorado, Florida, Massachusetts, New Mexico, New Jersey, and Tennessee.

12.  PEER is not a commercial enterprise for purposes of the fee waiver provision of FOIA.  *See* 5 U.S.C. § 552 (a)(4)(A)(iii).  Among other public interest projects, PEER engages in advocacy, research, education, and litigation relating to the promotion of public understanding and debate concerning key current public policy issues, focusing on the environment, public lands and natural resources management, public funding of environmental and natural resource agencies, and ethics in government.

13.   Informing the public about these important public policy issues is central to PEER's mission.  PEER educates and informs the public through news releases to the media; PEER's website, www.peer.org, which draws between 1,000 and 10,000 viewers per day; and PEER's newsletter which has a circulation of approximately 20,000, including 1,500 environmental journalists.

14.  USACE  is an agency of the United States as defined by 5 U.S.C. § 552(f)(1), which serves the Armed Forces and the Nation by providing engineering services through military and civilian biologists, engineers, geologists, hydrologists, natural resource managers and other professionals.

15.  USACE's duties include planning, designing, building and operating water resources and other civil works projects serving navigation, flood control, environmental protection and disaster response.

16.  As an agency of the United States, USACE is charged with the duty to provide public access to documents in its possession consistent with the requirements of the FOIA and the fee waiver provisions contained therein.

<u>FACTS</u>

17.  On March 7, 2007, Plaintiff filed a FOIA request (Attachment 1) with the USACE seeking documents relating to USACE and contractor environmental and safety compliance issues, and potential retaliatory action against an employee who raised environmental and safety concerns, during Hurricane Katrina recovery efforts in Mississippi.  Citing 5 U.S.C. § 552 (a)(4)(A), Plaintiff also requested that all fees be waived because "disclosure of the information is in the public interest…and is not primarily in the commercial interest of the requestor."

18.  Specifically, Plaintiff requested:  (1)  Documents relating to reports of violations of USACE safety protocol and contractual requirements by Ashbritt, Inc. (a private environmental services company) and its subcontractors between November 2005 and January 2006; (2) All documents containing information regarding action taken by USACE following reports of violations related to the subject of the first request above, including explanations for specific action taken or decisions not to act; (3) Documents containing information related to the decision of Ms. Teresa Morales to fill a pond with smoldering mulch (the "smoldering mulch incident") in early January 2006 and the implementation of this decision; documents related to the reasons for acting without a permit under Section 404 of the Clean Water Act; and any documents related to

communications or consultations, or the lack thereof, with the Environmental Protection Agency about this incident; (4) any records of discussions between Ms. Morales and other Corps officials regarding Mr. Michael Daily's concerns about the USACE's compliance with the Clean Water Act and his performance related to the smoldering mulch incident; and (5) Documents reflecting or containing information regarding the decision to transfer Mr. Michael Daily from Hurricane Katrina recovery efforts in Mississippi on January 10, 2006, including specific documentation of all incidents cited as reasons for his transfer -- including the smoldering mulch incident, Daily's complaints about safety and contractual violations by Ashbritt, and any complaints about his behavior by co-workers or superiors.

19. By letter dated April 2, 2007 (Attachment 2) USACE, through District Counsel Henry H. Black, acknowledged receipt of Plaintiff's FOIA request and assigned it FOIA Request No. 07-23. In that same letter, USACE denied Plaintiff's fee waiver request under 5 U.S.C. §552(a)(4)(A)(iii), stating that "no other organization or person has made any of the type [of] allegations made in your letter. Therefore, the documents you seek do not provide significant information in the public interest." USACE classified Plaintiff as a "commercial" user required to pay search, review, and duplication costs, and stated that "a full search of the documents in your FOIA request would be a considerable effort." April 2, 2007 Letter. USACE added that upon receipt of a willingness to pay letter from PEER, District Counsel Henry H. Black would initiate a search for responsive documents. USACE also advised Plaintiff of its right to appeal the fee waiver determination.

20. In the April 2, 2007 letter, USACE contended the smoldering mulch incident did not have any environmental impact and is of no significant interest to the general population. Purportedly

to prove this, USACE produced three documents relating to the smoldering mulch incident. Each of the three was entitled:  Daily SIT-REP, Brookhaven Debris Resident Office, Lincoln, Pike, and Walthall Counties and each was filed by T. Morales.  They were dated January 8, 9, and 10, 2006.

21.  The January 8, 2006 SIT-REP includes a description of the discovery of the smoldering mulch pile and the procedure used to secure county and state agency approval to put the smoldering mulch in a large detention pond located at the Brookhaven Landfill.

22.  The January 9, 2006 SIT-REP states that the fire in the mulch was extinguished, and that some of the mulch pile was placed in a detention pond "per the County's request and MDEQ's [Mississippi Department of Environmental Quality] approval."  It also claims that Mr. Daily was removed from a QA [Quality Assurance] supervisory role due to "continued complaints from subcontractors and fellow QA.'s"  and describes a conflict between Mr. Daily and Ms. Morales where the two purportedly exchanged words about Mr. Daily's assignment to monitor what was left of the smoldering mulch pile.

23.  The January 10, 2006 SIT-REP states Mr. Daily was dismissed for insubordination.  The report indicates a memo was written to detail the issue.  USACE did not provide Plaintiff with this memo in response to the FOIA request.

24.  The April 2, 2007 letter only vaguely addressed the portions of PEER's request not related to the smoldering mulch incident, and failed to explain why a fee waiver was denied with respect to those portions.  The letter merely stated that prior reviews of the Katrina relief effort by Congress, GAO reports, and Department of Defense and Corps audit agencies had not

discovered any environmental damage caused by the relief effort, and that no other organization

or person had made the type of "allegations" PEER made in its request.  The portions of PEER's

request unrelated to the smoldering mulch incident included requests for reports of violations of

USACE safety protocol and contractual requirements by Ashbritt, Inc. and its subcontractors

between November 2005 and January 2006; documents containing information regarding action

taken by USACE following reports of violations related to Ashbritt's operations in the relevant

time period, including explanations for specific action taken or decisions not to act;  and

documentation of all incidents other than the smoldering mulch incident and any complaints

about Mr. Daily's behavior by co-workers or superiors which were cited as reasons for his

transfer.

25.  Even with regard to the smoldering mulch incident, the April 2, 2007 letter and the

documents supplied did not respond to portions of Plaintiff's FOIA request, such as

documentation concerning Daily's concerns about USACE's compliance with the Clean Water

Act, and any communication, or explanation for the lack thereof, with the Environmental

Protection Agency about the smoldering mulch incident.   No explanation was given as to denial

of the fee waiver for these portions of the request.

26.  By letter dated June 1, 2007, Plaintiff appealed USACE's denial of the fee waiver.

(Attachment 3).  Plaintiff provided detailed arguments for why its FOIA request satisfied the

requirements for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii), specifically how the request

contributes significantly to public understanding of the operations or activities of the

government, and how in no sense would disclosure of the requested documents serve a

commercial interest of PEER – a non-profit organization dedicated to upholding the public trust

through responsible management of the nation's resources and supporting professional integrity within government agencies.

27.  USACE acknowledged Plaintiff's letter of appeal in a correspondence dated June 22, 2007 and indicated that it had forwarded Plaintiff's FOIA appeal package on June 21, 2007 to the Office of the Chief Counsel in Washington, DC.

28.  Plaintiff has received no further communication from USACE regarding the denial of the fee waiver appeal.  Plaintiff never heard anything from the Office of the Chief Counsel.

29.  USACE did not provide a cogent response to Plaintiff's detailed June 1, 2007 appeal, nor did it provide the requested documents.  In doing so, USACE failed to meet the twenty (20) day limit FOIA imposes for responding to an appeal.  *See* 5 U.S.C. §552(a)(6)(A)(iii).

30.  It has been well over one year since Plaintiff initiated its March 7, 2007 FOIA request and asked for a fee waiver.  It has now also been over one year since Plaintiff appealed USACE's denial of Plaintiff's fee waiver request.  This is more than adequate time for USACE to provide a cogent response to Plaintiff's appeal, and far more time than that legally required under FOIA.

31.  Plaintiff has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C) for its FOIA request, and now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

CAUSES OF ACTION

Count I:  Violation of the Freedom of Information Act

32.  Plaintiff repeats and incorporates by reference the allegation in paragraphs 1 through  31.

33.  USACE's denial of Plaintiff's request for a fee waiver is in violation of FOIA, 5 U.S.C. § 552(a)(4)(A)(iii).

Count II:  Violation of the Freedom of Information Act

34.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 31.

35.  USACE's failure to disclose the requested documents is a violation of FOIA, 5 U.S.C. § 552.

Count III:  Violation of the Administrative Procedure Act

36.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 31.

37.  USACE's failure to disclose documents responsive to Plaintiff's request constitutes agency action unlawfully withheld and unreasonably delayed, in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 – 706.  USACE's failure in this matter is arbitrary, capricious, an abuse of discretion, not in accordance with the law and without observance of procedure required by law, all in violation of the APA.

RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests and prays that this Court:

    i.       Enter an Order declaring that USACE has wrongfully denied Plaintiff's fee waiver request;

    ii.      Enter an Order declaring that USACE has wrongfully withheld the requested agency records;

    iii.     Issue a permanent injunction directing USACE to disclose to Plaintiff all wrongfully withheld documents without any requirement to pay search or copying fees;

iv.     Maintain jurisdiction over this action until USACE is in compliance with FOIA,

APA, and every order of this Court;

v.      Award Plaintiff its attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E);

and

vi.     Grant such additional and further relief to which Plaintiff may be entitled.

Dated: Washington, D.C.
August 1, 2008
                                                Respectfully submitted,


                                                _____
                                                Paula Dinerstein, DC Bar No. 333971
                                                Senior Counsel
                                                Public Employees for Environmental Responsibility
                                                2000 P Street, NW, Suite 240
                                                Washington, D.C. 20036
                                                (202) 265-7337


                                                _____
                                                Adam E. Draper, DC Bar No. 974880
                                                Staff Counsel
                                                Public Employees for Environmental Responsibility
                                                2000 P Street, NW, Suite 240
                                                Washington, D.C. 20036
                                                (202) 265-7337

                                                Attorneys for Plaintiff

# ⌂PEER

**Public Employees for Environmental Responsibility**

**2000 P Street, NW • Suite 240 • Washington, D.C. 20036 • 202-265-PEER(7337) • fax: 202-265-4192**
e-mail: info@peer.org • website: www.peer.org

7 March 2007

U.S. Army Engineer District, Vicksburg
ATTN: CEMVK-OC
4155 Clay Street
Vicksburg, MS 39183-3435
foia-mvk@usace.army.mil

**SUBJECT: FOIA REQUEST**

Submitted Electronically and by Certified Mail

To Whom It May Concern:

Pursuant to the Freedom of Information Act, 5 U.S.C. 552, as amended, Public Employees for
Environmental Responsibility (PEER) requests documents concerning Hurricane Katrina
recovery efforts in Mississippi overseen by the U.S. Army Corps of Engineers; in particular,
compliance with safety and contractual requirements by Corps contractors and subcontractors,
Corps compliance with the requirements of the Federal Water Pollution Control Act of 1972
(Clean Water Act), and potentially retaliatory action taken against an employee who raised safety
and environmental concerns to his superiors.

Specifically, we request the following:

1. Documents relating to reports of violations of Corps safety protocol and contractual
   requirements by Ashbritt, Inc. and its subcontractors between November 2005 and
   January 2006. This would include all reports of violations which may include but are not
   limited to the removal of ineligible materials such as healthy, undamaged trees, violations
   of speed limits, potentially dangerous work being performed in residential areas without
   flagmen properly stationed on site, work being unsafely conducted at night, and
   deliberate efforts on the part of Ashbritt's subcontractors to avoid supervision by Corps
   officials and behavior by Ashbritt's subcontractors indicating a lack of understanding and
   respect for Corps safety protocol and contractual requirements.

2. We also request all documents containing discussion of and information regarding action
   taken by the Corps following such reports of violations which are the subject of the first
   request, above, including reasons for specific actions taken or reasons for decisions not to
   take action.

**PEER v. USACE At.1**

**Field Offices:** California • Florida • Maine • New England • New Jersey • Refuge Keeper • Rocky Mountain • Tennessee • Texas • Washington

3. Documents reflecting or containing information related to the decision of Ms. Teresa Morales to fill a pond with smoldering mulch in early January 2006, and the implementation of this decision. This would include any documentation of discussions with Mr. Michael Daily regarding the Corps' compliance with the Federal Water Pollution Control Act of 1972 (Clean Water Act) as well as any documentation of the decision to go forward with filling the pond despite the agency's lack of a permit under Section 404 of the Act and any stated reasons for that decision, as well as any documents regarding any communication with the Environmental Protection Agency on this incident or any documents containing information related to a decision not to consult with or inform the EPA about this incident.

4. We also request any documents concerning any discussions or conversations between Ms. Morales and other Corps officials regarding Mr. Daily's concerns about CWA compliance and his performance related to the incident described in number 3.

5. Documents reflecting or containing information regarding the decision to transfer Mr. Michael Daily from Hurricane Katrina recovery efforts in Mississippi on January 10, 2006. This would include precise reasons for this decision, and specific documentation of all incidents cited as reasons for this action. These incidents may include but are not limited to, Mr. Daily's involvement in an incident involving smoldering mulch in early January 2006, Mr. Daily's reports of safety and contractual violations by Ashbritt subcontractors throughout his tenure in Mississippi, and specific complaints regarding his behavior by fellow employees, subcontractors, and his superiors.

This request includes all documents that have ever been within your custody or control, whether they exist in agency "working," investigative, retired, electronic mail, or other files currently or at any other time.

For any documents that you block from release due to specific exemption(s) from the requirements of the Freedom of Information Act, please provide an index itemizing and describing the documents or portions of documents withheld. The index should, pursuant to the holding of Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973) cert. denied, 415 U.S. 977 (1974), provide a detailed justification for claiming a particular exemption that explains why each such exemption applies to the document or portion of a document withheld.

PEER requests that all fees be waived because "disclosure of the information is in the public interest ... and is not primarily in the commercial interest of the requestor" (5 U.S.C. 552 (a) (4)(A)):

*1. The records concern the operations or activities of the Government.*
This FOIA request is, by its terms, limited to identifiable activities of the U.S. Army Corps of Engineers and contractors under its authority.

*2. The disclosure of the requested records is likely to contribute to public understanding of these operations or activities.*

The requested material concerns the management of recovery efforts in southern Mississippi following Hurricane Katrina. The focus of our FOIA request is to document the frequency of and response to violations of safety and environmental regulations by employees and contractors of the U.S. Army Corps of Engineers during this recovery effort; specifically violations of worker safety and traffic safety protocol and violations of the Clean Water Act. We also seek to document the actions taken against an employee who raised concerns to his superiors about such violations. This information is necessary to determine whether the Corps has acted appropriately to ensure the safety of its employees, the employees of its contractors, and the general public, and to protect the quality of the waters of the United States in the course of this project. The requested documents are precisely on point of the subject matter of the request.

*3. The release of the requested records will contribute significantly to public understanding of the governmental activities.*
While it is difficult to warrant in advance to seeing it, just how significant the information will be to the general public, the nature of the information should shed some direct light on whether the Corps and its contractors have followed established safety protocol, contractual requirements, and environmental regulations in the Hurricane Katrina recovery effort in southern Mississippi, and specifically, whether the Corps' actions – or lack of action – have created a danger to the public health and safety, the safety of the Corps' employees, the safety of the employees of the Corps' contractors and subcontractors, and/or endangered the quality of the waters of the United States. Furthermore, the information should indicate whether the Corps took retaliatory action against an employee who raised concerns about such violations in an attempt to discourage employees from raising such concerns.

While a certain segment of the population has a keen interest in the safety of Corps employees and the employees of Corps contractors and subcontractors, and the quality of waters and wetlands in southern Mississippi, the broader public interest served by this request concerns the use of federal tax dollars and the effective management of Hurricane Katrina recovery efforts in Mississippi.

PEER has the ability to provide the information to the general public through —

> ➤ Release to the news media;
> ➤ Posting on the PEER web page which draws between 1,000 and 10,000 viewers per day; and
> ➤ Publication in PEER's newsletter that has a circulation of approximately 20,000, including 1,500 environmental journalists.

Through these methods, PEER generates an average of 1.5 mainstream news articles per day. If appropriate depending on the information received, PEER will use these means to inform the general public of information obtained as a result of this FOIA request.

*4. Disclosure would not serve a commercial interest of the requestor.*
Disclosure is in no way connected with a commercial interest of the requestors in that PEER is a non-profit, nonpartisan public interest organization concerned with upholding the public trust through responsible management of our nation's resources, and with supporting professional

3 of 4

4 of 4

integrity within public land management and pollution control agencies.  To that end, PEER is designated as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code.

Should you have any questions about this FOIA request, please contact me at (202) 265-7337.  I will look forward to receiving the agency's final response within 20 working days.

Cordially,

*Paula Dinerstein*

Paula Dinerstein\
Senior Counsel

*Kendrick Wilson*

Kendrick Wilson\
Legal Intern



# DEPARTMENT OF THE ARMY
VICKSBURG DISTRICT, CORPS OF ENGINEERS
4155 CLAY STREET
VICKSBURG, MISSISSIPPI 39183-3435

REPLY TO
ATTENTION OF:                           April 2, 2007

Office of Counsel

SUBJECT:  Freedom of Information Act (FOIA) Request No. 07-23

Ms. Paula Dinerstein
Mr. Kendrick Wilson
PEER
2000 P Street NW
Suite 240
Washington, DC 20036

Dear Ms. Dinerstein and Mr. Wilson:

This letter acknowledges receipt of your FOIA request concerning Hurricane Katrina recovery efforts in Mississippi and alleged retaliatory action taken against Michael Daily.

The Hurricane Katrina relief effort is a highly profiled recovery effort and has been very publicly scrutinized.  The relief effort has been the subject of testimony before Congress, published GAO reports and reviews by numerous audit agencies within the Department of Defense and the Corps.  None of these reviews have discovered any environmental damage by the relief effort.  The relief effort by the Corps in Mississippi concluded on 30 August 2006, and no other organization or person has made any of the type allegations made in your letter.  Therefore , the documents you seek do not provide significant information in the public interest.  Therefore, your request for a fee waiver is denied.

The granting of a fee waiver request is dependent upon meeting the conditions pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) which states:

> Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

See *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987).  Your request does not meet the criteria allowed for a fee waiver.

Therefore, I am classifying you as a "commercial" user wherein you are responsible for search, review, and duplication costs.  Charges for document "search" include all the time spent looking for responsive material, including page-by-page or line-by-line identification of material.  The "review" costs which may be charged consist of the direct costs incurred during the initial

**PEER v. ACE A#2**

-2-

examination of the documents for the purposes of determining whether the documents are releasable. Review time includes processing the documents for disclosure but it does not include time spent resolving general legal or policy issues regarding the applicability of particular exemptions. "Duplication" charges represent costs of making copies of the applicable documents.

Notwithstanding my denial of your request for a fee waiver, I am enclosing three Daily SIT-REP's which mention the incident of the smoldering mulch. Comments about Michael Daily were made in the SIT-REPS. I have released this information to you in the hope that you will realize that Mr. Daily is complaining about an incident that did not have any environmental impacts and was of no significant interest to the general population. Mr. Daily was sent back to his home duty station which was not an adverse action against him. I do not believe that you have any documentation of any adverse action being taken against Mr. Daily, since there was none. These documents were discovered with a minimal effort so no charge is made for them; a full search of the documents in your FOIA request would be a considerable effort. On page 3 of the Jan 10, 2006 Daily SIT-REP, I redacted the name of an individual that was sent home for sexual harassment. This person's name is of no significance to your FOIA Request and releasing his name violates his privacy rights.

Because your request for a fee waiver is denied, you are advised of your right to appeal this determination through this Office to the Secretary of the Army (Attn: General Counsel). Your appeal must be postmarked no later than 60 calendar days after the date of this letter. The envelope containing the appeal should bear the notation "Freedom of Information Act Appeal" and should be sent to the undersigned at the above address.

However, if you desire to pursue this request and are willing to pay the costs incurred, please send me a letter indicating your willingness to pay. Upon receipt of your willingness to pay letter, I will initiate a search for applicable documents. When the processing costs are calculated, I will inform you. If no response is received within thirty days from the date of this letter, I will consider your request withdrawn.

Sincerely,

for Henry H. Black
District Counsel

# Daily SIT-REP

# Brookhaven Debris Resident Office
# Jan 8, 2006
# Lincoln, Pike, and Walthall Counties

### 1.0 Personnel

| Office Staff: | Resident Engineer | Teresa Morales | 703-254-7695 |
| | Admin | Marilyn Euseary | 337-281-4676 |

**Departures since last reporting period:**

**Remarks/Issues:** Need additional QA's in Walthall, Pike Co's.

**New Arrivals:  Teresa Morales has resumed RE duties  as of 7 Jan 06**
**3 new Malcolm Pirnie QA Contractors**

### 2.0 Mission Progress

Pike County:
------------------

1st pass 99% complete—2nd pass 75% complete

Lincoln  County:
--------------------

Lincoln Co Complete—Received signed Letter of Completion on 13 Dec 2005

Walthall County:
----------------------
1st pass -99% complete
**Final Pass – 75% complete**

Events or issues that may affect progress: Eligibility of Federal aid roads in the counties

**Remarks/Issues:**

Due to concerns regarding fire hazards at the chipped piles, I asked Mike Daily (QA) the previous day to start inspecting the condition of the all piles. Around 7:00 a.m. Mike arrived at the Brookhaven Landfill site and noticed that a portion of the pile was smoldering. Mike contacted me around 8:30 a.m. to inform me of the situation. I immediately drove to the Brookhaven site to assess the situation. On my way to the site, I contacted Greg S. (PM for AshBritt in Lincoln and Pike Counties) and Ben Finn to make them aware of the situation. I informed Greg S. that there was smoking at the pile and that he should be prepared that a fire might start some time soon. When I arrived at the site, Mike was not there but there was a backhoe operator working the pile alone. Large amounts of smoke were coming off the pile. I immediately told the operator to stop

working the pile. I asked the operator to dump the pile in his bucket and to move his equipment away from the pile. Within minutes flames started at the base of the large pile. I called Greg S. again and informed him of the severity of the situation. He told me that he had called the fire department and that they were on their way and that Dee Carethers, his safety officer was on the way.    Both Mike Daily and Dee Carethers from Safety arrived shortly afterward. The fire truck (1000 gallons capacity) arrived approximately 20 to 30 minutes later. They immediately begin working to contain the flames in the pile and in the smaller piles that the backhoe operator started.  The fire department was able to get the flames out with their first tank of water.

They then refilled their tanks in hopes of working down the pile to put out the internal hot spots. Per a previous conversation with Kyron Mabry earlier, I stated that there was concern that if they kept moving the pile that the situation might get worse. They felt the best option was to continue working the hot spots out while continually applying water. As they worked the pile, the smoking dropped off significantly and they were able to manage the pile with a dozer. It was still smoking in spots and the small piles the operator moved away from the large piles were smoldering but there were no flames. Within a couple of hours the pile was under control. By this time AshBritt had sent a large dozer from the Summit site to assist in managing the piles. Several other additional fire trucks arrived on site including a volunteer fire truck (3000 gallon capacity).

Dee C. suggested that one option was to put the smoldering material in the large detention pond on the property. Dee contact Clifford Gailey of the Lincoln County Emergency Management to see if this was acceptable. Clifford Gailey contacted several county officials for clearance. After talking with several individuals from the County Mr. Gailey relayed back to Dee and the Corps that the County would prefer the piles to go into the pond than stay in the open and smolder. I noted that we would first need clearance from MDEQ as this would be considered final disposal. I contacted Chris Andrews and David Wallace of the Corps for assistance. Chris confirmed that the Brookhaven Landfill was a Class I landfill and therefore eligible to receive woody material for final disposal. David W. was unable to find a contact from MDEQ since it was the weekend. Instead Mr. Gailey contacted Barry McMaster and Eric Deere of Chief of Emergency Operations of MDEQ. They were presently assisted at the Petal site. He gave Mr. Gailey verbal clearance to start hauling the smoldering material into the detention pond.

Kyron Mabry and I stayed in contact throughout most of the day. He noted that AshBritt should hire start a 24/7 fire watch at all sites where smoke is present. In addition, no piles were to be moved without a water truck present.  Based on conversations with my QA lead, Carol Cotter who immediately went out to inspect the condition of the other piles, she informed the Brookhaven site was the only pile that was smoking. The other piles appeared fine, although the piles at Summit and Lincoln were steaming.

I left the site about 3:30 p.m. Mike Daily stayed to watch the operations until he could be relieved by a QA red-shirt.  As it stands now a portion of the pile is still smoking but there have been no flames since the fire was extinguished in early part of the day.  There are two dozers, a water truck, and a fire truck at the site. There is a QA and QC present to watch over the pile during the night in the event of another fire.

3.0 Landfill and Reduction Sites

Lincoln County:

     a. City of Brookhaven, MS – Class I SW permit
       1.Reduction Method—chipping
       2.Capacity used: 75% -- Mulch pile on fire

     b.  Lincoln Co. #1 Lincoln County site, Industrial park

1. Reduction Method---chipping
2. Capacity used: 95%
3. Mulch pile getting hot, fire prevention plan to be implemented ASAP

**Impact to mission:**

Pike County:
    a.  County owned site- Fernwood
        1. Reduction Method---chipping
        2. Capacity used: 40%
        3. Mulch pile being monitored

    b.  SW MS Community College- for City of Summit
        1. Reduction Method---chipping
        2. Capacity used: 60%
        3. Mulch pile being monitored

**Impact to mission:**

Walthall County:
    a.  Alvis Fortenberry – Private-
        1. Reduction Method--chipping
        2. Capacity used: 85%
        3. Mulch pile being monitored

        Alton Harvey - Private-
        1. Reduction Method---chipping
        2. Capacity used 80%
        3. Chipping has resumed at this site as of 1-4-06
        4. Mulch pile being reduced by haul out

**Impact to mission**: AshBritt has an agreement with a beneficial user to haul chips out of the debris sites in Walthall Co. at no cost to the Government. Haul out is continuing.
TDRS site management is improving as a result of better relationship with AshBritt PM after institution of Partnering meetings, some concerns still exist, especially with recent lay off of AshBritt QC personnel.

## 4.0 Community Coordination / Current Events

a.  Lincoln County and Brookhaven:  Weekly (Tuesday 0800 Hrs) update meeting with city and county officials.
b.  Walthall County:  Weekly (Tuesday 1100 Hrs) update meeting with county officials.
c.  Pike County:  Weekly (Wed 1000) county officials

## 5.0 Contractor

**Number Contractor trucks by County As Of Jan 8, 2006:**

    ➢  Pike County: 23 Trucks,  10 Crews
    ➢  Walthall County: 30 Trucks,  20 Crews

**Impacts to Mission:**

13 Dec —Lincoln Co. signed Letter of Completion

### 6.0  Safety/Incidents

See comments above

### 7.0  Equipment

Long sleeve red shirts or red winter jackets needed.

### 8.0  SIRs/ CCIRs/ Any Other Issues

Filed by:  T.Morales, RE / Lincoln, Pike, and Walthall Co.

4

# Daily SIT-REP

# Brookhaven Debris Resident Office
# Jan 9, 2006
# Lincoln, Pike, and Walthall Counties

### 1.0 Personnel

| Office Staff: | Resident Engineer | Teresa Morales | 703-254-7695 |
|---|---|---|---|
| | Admin | Marilyn Euseary | 337-281-4676 |

**Departures since last reporting period:**

**Remarks/Issues:** Need additional 2 new (red shirt) QA's ASAP in Walthall, Pike Co's.
Need additional 12-14 Contract QA's in Walthall, Pike Co's.

### New Arrivals:

### 2.0 Mission Progress

Pike County:
-----------------

1st pass 99% complete---2nd pass 75% complete

Lincoln County:
------------------------

Lincoln Co Complete---Received signed Letter of Completion on 13 Dec 2005

Walthall County:
-------------------------
1st pass -99% complete

**Final Pass – 75% complete**

**Events or issues that may affect progress: Eligibility of Federal aid roads in the counties**

**Remarks/Issues:**

### 3.0 Landfill and Reduction Sites

Lincoln County:

      a. City of Brookhaven, MS – Class I SW permit
        1.Reduction Method---chipping

2.Capacity used: 75% -- Fire in mulch pile has been extinguished. Approximately 2,000 cubic yards of chipped material remain. The rest was placed in the detention pond per the County's request and MDEQ's approval. The remaining pile of material was knocked down to below 8' and spread out to cool.

b. Lincoln Co. #1 Lincoln County site, Industrial park
1.Reduction Method---chipping
2. Capacity used: 95%
3. Mulch pile getting hot, fire prevention plan to be implemented ASAP

Impact to mission:

Pike County:
a. County owned site- Fernwood
1.Reduction Method---chipping
2. Capacity used: 40%
3. Mulch pile being monitored

b. SW MS Community College- for City of Summit
1. Reduction Method---chipping
2. Capacity used: 60%
3. Mulch pile being monitored

Impact to mission:

Walthall County:
a. Alvis Fortenberry – Private-
1. Reduction Method--chipping
2. Capacity used: 85%
3. Mulch pile being monitored

Alton Harvey - Private-
1. Reduction Method----chipping
2. Capacity used 80%
3. Chipping has resumed at this site as of 1-4-06
4. Mulch pile being reduced by haul out

Impact to mission: AshBritt has an agreement with a beneficial user to haul chips out of the debris sites in Walthall Co. at no cost to the Government. Haul out is continuing. TDRS site management is improving as a result of better relationship with AshBritt PM after institution of Partnering meetings, some concerns still exist, especially with recent lay off of AshBritt QC personnel.

4.0 Community Coordination / Current Events

a. Lincoln County and Brookhaven: Weekly (Tuesday 0800 Hrs) update meeting with city and county officials.
b. Walthall County: Weekly (Tuesday 1100 Hrs) update meeting with county officials.
c. Pike County: Weekly (Wed 1000) county officials

5.0 Contractor

**Number Contractor trucks by County As Of Jan 9, 2006:**

> Pike County: 31 Trucks, 17 Crews
> Walthall County: 52 Trucks, 30 Crews

**Impacts to Mission:**

13 Dec ---Lincoln Co. signed Letter of Completion

### 6.0 Safety/Incidents

Today a Contract QA attempted to stop an AshBritt crew from picking up a debris pile due to safety concerns about a nearby power line. The crew ignored her and picked up the material. There was no QC present to consult with or have direct the crew accordingly. The Contract QA refused to write them a load ticket so they went to the Harvey tower to see if they could get a ticket there. The tower refused. Vickie, site manager for AshBritt, concurred with the QA in the field and wrote the crew up.

### 7.0 Equipment

Long sleeve red shirts or red winter jackets needed.

### 8.0 SIRs/ CCIRs/ Any Other Issues

Mike Daily was recently removed from a QA supervisory role due to continual complaints from subcontractors and fellow QAs. This was on the advice of the former RE, Ben Finn. As such, I asked him to assist with environmental concerns such as help with the hot mulch piles. This morning he contacted me and was frustrated that he was being asked to do 'QA' work. I explained that making sure a fire did not start up again and that the remaining pile was handled properly was important and needed to be done. He argued otherwise. I asked him to please let me know if he could not make it back to the Brookhaven site, as I needed to find someone to relieve the fire watch QA soon. He begrudgingly agreed to do so but mentioned that we would have to talk later. Mike mentioned later that he was considering moving to another county because he felt like he had been 'fired' and he didn't like the work he was being asked to do. He felt that helping address the mulch issues should not involve having to watch over the Brookhaven site since this was more QA work than environmental work. I explained that watching over the pile as it was being extinguished and insuring that the remaining pile was managed properly was part of helping address the mulch pile concerns. I also explained that the choice to leave the county was up to him but that I needed someone who could help focus specifically on the mulched piles, which also includes watching over operations when a Contractor is present. He told me that he would get back to me in the morning regarding the situation. I contacted Pat O'Brien to inform him of the pending situation.

Filed by: T.Morales, RE / Lincoln, Pike, and Walthall Co.

# Daily SIT-REP

# Brookhaven Debris Resident Office
# Jan 10, 2006
# Lincoln, Pike, and Walthall Counties

**1.0** <u>Personnel</u>

Office Staff:    Resident Engineer    Teresa Morales    703-254-7695
                 Admin               Marilyn Euseary    337-281-4676

**Departures since last reporting period:**

**Remarks/Issues:**  Need additional 4 new (red shirt) QA's ASAP in Walthall, Pike Co's.
                     Need additional 12-14 Contract QA's in Walthall, Pike Co's.

**New Arrivals:**

**2.0** <u>Mission Progress</u>

Pike County:
-----------------

1st pass 99% complete—2nd pass 75% complete

Lincoln  County:
----------------------

Lincoln Co Complete—Received signed Letter of Completion on 13 Dec 2005

Walthall County:
------------------------
1st pass -99% complete

**Final Pass – 75% complete**

**Events or issues that may affect progress: Eligibility of Federal aid roads in the counties**

**Remarks/Issues:**

**3.0** <u>Landfill and Reduction Sites</u>

Lincoln County:

      a. City of Brookhaven, MS – Class I SW permit
        1.Reduction Method—chipping

2.Capacity used: 75% -- Fire in mulch pile has been extinguished. Approximately 2,000 cubic yards of chipped material remain. The rest was placed in the detention pond per the County's request and MDEQ's approval. The remaining pile of material was knocked down to below 8' and spread out to cool.

   b. Lincoln Co. #1 Lincoln County site, Industrial park
      1.Reduction Method---chipping
      2. Capacity used: 95%
      3. Mulch pile getting hot, fire prevention plan to be implemented ASAP

      **Impact to mission**:

Pike County:
   a. County owned site- Fernwood
      1.Reduction Method---chipping
      2. Capacity used: 40%
      3. Mulch pile being monitored

   b. SW MS Community College- for City of Summit
      1. Reduction Method---chipping
      2. Capacity used: 60%
      3. Mulch pile being monitored

      **Impact to mission**:

Walthall County:
   a. Alvis Fortenberry -- Private-
      1. Reduction Method--chipping
      2. Capacity used: 85%
      3. Mulch pile being monitored

      Alton Harvey - Private-
      1. Reduction Method---chipping
      2. Capacity used 80%
      3. Chipping has resumed at this site as of 1-4-06
      4. Mulch pile being reduced by haul out

      **Impact to mission**: AshBritt has an agreement with a beneficial user to haul chips out of the debris sites in Walthall Co. at no cost to the Government. Haul out is continuing.
TDRS site management is improving as a result of better relationship with AshBritt PM after institution of Partnering meetings, some concerns still exist, especially with recent lay off of AshBritt QC personnel.

## 4.0 Community Coordination / Current Events

a. Lincoln County and Brookhaven: Weekly (Tuesday 0800 Hrs) update meeting with city and county officials.
b. Walthall County: Weekly (Tuesday 1100 Hrs) update meeting with county officials.
c. Pike County: Weekly (Wed 1000) county officials

## 5.0 Contractor

**Number Contractor trucks by County As Of Jan 10, 2006:**

- ➤ Pike County: 23 Trucks, 15 Crews
- ➤ Walthall County: 59 Trucks, 27 Crews

**Impacts to Mission:**

13 Dec –--Lincoln Co. signed Letter of Completion

**6.0 Safety/Incidents**

None to report

**7.0 Equipment**

Two cameras have been requested from Hattiesburg

**8.0 SIRs/ CCIRs/ Any Other Issues**

Two employees were dismissed. Mike Daily was dismissed for insubordination and          was dismissed for concerns regarding sexual harassment. Memos regarding both issues have been written up explaining in greater detail both issues.

Filed by: T.Morales, RE / Lincoln, Pike, and Walthall Co.

# ꓥPEER

**Public Employees for Environmental Responsibility**

**2000 P Street, NW • Suite 240 • Washington, D.C. 20036 • 202-265-PEER(7337) • fax: 202-265-4192**
e-mail: info@peer.org • website: www.peer.org

1 June 2007

Secretary of the Army
Attn: General Counsel
Vicksburg District, Corps of Engineers
4155 Clay Street
Vicksburg, MS  39183-3435

**RE:   Freedom of Information Act (FOIA) Appeal, Request No. 07-23**

To Whom It May Concern:

This letter is to appeal the Department of the Army's denial of Freedom of Information Act (FOIA) Request No. 07-23, submitted by Public Employees for Environmental Responsibility (PEER) on March 7, 2007.  PEER had requested the following information:

1. Documents relating to reports of violations of Corps safety protocol and contractual requirements by AshBritt, Inc. and its subcontractors between November 2005 and January 2006;

2. Documents containing discussion of and information regarding action taken by the Corps following such reports of violations;

3. Documents reflecting or containing information related to the decision of Ms. Teresa Morales to fill a pond with smoldering mulch in January 2006 and the implementation of this decision.  This includes documentation of any discussions with Mr. Michael Daily regarding compliance or non-compliance with the Clean Water Act, and documentation of any communications with the Environmental Protection agency on this incident;

4. Documents concerning discussions between Ms. Morales and other Corps officials regarding Mr. Daily's concerns about CWA compliance and his performance related to the incident described in number 3;

5. Documents reflecting or containing information regarding the decision to transfer Mr. Michael Daily from Hurricane Katrina recovery efforts in Mississippi on January 10,

**PEER v USACE  Att. 3**

> 2006, including the precise reasons for that decision, and documentation of all incidents
> cited as reasons for this action.

In addition to this documentation request, PEER requested a fee waiver of this material, and
explained why this request merited a fee waiver (see March 7 Attachment). By response letter
dated April 2, 2007, PEER received a FOIA denial from the Department of the Army.  PEER is
appealing this denial on the following grounds:

### PEER'S FOIA DOCUMENT REQUEST SATISFIES THE REQUIREMENTS FOR FEE WAIVER UNDER 5 U.S.C. § 552(A)(4)(A)(III) BECAUSE THE FOIA REQUEST IS RELATED TO A GOVERNMENTAL ACTIVITY AND DISCLOSURE OF SUCH DOCUMENTS IS IN THE PUBLIC INTEREST

In order to meet the requirements for a FOIA fee waiver request under 5 U.S.C. §
552(a)(4)(A)(iii), the request "must be made with 'reasonable specificity,' and be based on more
than 'conclusory allegations'" that the documents requested are both related to a governmental
activity and are in the public interest.  Judicial Watch, Inc. v. Rossotti  326 F.3d 1309, 1312, 356
U.S.App.D.C. 54, 57 (C.A.D.C., 2003), citing Larson v. C.I.A., 843 F.2d 1481, 1483
(D.C.Cir.1988) (per curiam) (internal quotation marks and citation omitted) and Nat'l Treasury
Employees Union v. Griffin, 811 F.2d 644, 647 (D.C.Cir.1987).

5 U.S.C. § 552(a)(4)(A)(iii) states in pertinent part:

> Documents shall be furnished without any charge or at a charge reduced below the fees
> established under clause (ii) if disclosure of the information is in the public interest because it
> is likely to contribute significantly to public understanding of the operations or activities of
> the government and is not primarily in the commercial interest of the requester.

PEER's document request satisfies the fee waiver requirements under the statute.  For one, the
request relates to governmental activity conducted by the Army Corps of Engineers, specifically
its cleanup operations in Mississippi after Hurricane Katrina.  Secondly, the disclosure of
information under this request is in the public interest because the environmental and safety
concerns caused by Hurricane Katrina impact the citizens who live in the affected Gulf Coast
area.  This information also benefits a larger sector of the public, by providing natural disaster
information that may be useful for other emergency situations, and is thus not limited to just
those living in Mississippi.  Further, this information can also indicate whether a retaliatory
action was taken against Mr. Daily for voicing his concerns with the recovery effort.  This is also
in the public interest, for retaliation against governmental employees prevents them from being
able to implement the environmental and safety protocols which are put in place to protect the
public.  Finally, disclosure of these documents does not serve a commercial interest of PEER, a
non-profit organization dedicated to upholding the public trust through responsible management
of the nation's resources and supporting professional integrity within the agencies.

**A.    The Requested FOIA Documents Concern the Operations and Activities Conducted by the U.S. Army Corps of Engineers and Its Contractors**

As indicated in the original March 7th correspondence, PEER's FOIA request is, by its terms, limited to identifiable activities of the U.S. Army Corps of Engineers and the contractors under its authority. Thus, the FOIA document request seeks material that is connected to governmental activity conducted by the Army Corps regarding the management details of the recovery efforts following Hurricane Katrina.

A document request satisfies the governmental operations and activities condition for fee waiver under FOIA if the requested records have a connection or relation to government activities and operations, and if the governmental entity facilitated or was involved in the transactions documented by the record. Forest Guardians v. U.S. Dept. of Interior, 416 F.3d 1173 (C.A.10 (N.M.), 2005). In Forest Guardians, the court held that the records requested by a non-profit organization met the "operations or activities of the government" criteria under FOIA, when the records indicated that the BLM's direct facilitation of lienholder agreements, grazing permits, and the possible influence of private groups on the BLM's decision-making process related to operations and activities of BLM. Id. at 1178.

Similarly, the activities encompassed by PEER's FOIA document request consist of decisions made by the Army Corps and their conversations with the contractors Ashbritt Inc. pertaining to the smoldering mulch pond incident; reports of safety protocol violations by the contractors, and documentation of subsequent corrective actions taken by the Army Corps; and records concerning the Army Corps' decision to transfer Mr. Daily, including the incidents cited as reasons for transfer. In all of the above cited activities, the Army Corps was either facilitating, or was involved directly or indirectly with identifiable transactions, including the decision to transfer Mr. Daily. Therefore, the records requested by PEER under this FOIA request are connected and related to the governmental activities and operations that the Army Corps engaged in with the contractors and with Mr. Daily, and thus satisfies the first prong of the fee waiver requirement under 5 U.S.C. § 552(a)(4)(A)(iii).

**B.    Disclosure and Release of FOIA Documents Contributes Significantly to the Public's Understanding of Mitigating Environmental Impacts and Enforcing Safety Protocols in Natural Disaster Areas, and of Proscribing Retaliation Against Employees**

In the original March 7th correspondence, PEER indicated that the focus of the FOIA request was to document the frequency and response to violations of safety and environmental regulations by employees and contractors of the U.S. Army Corps of Engineers during the recovery effort following Hurricane Katrina, particularly violations of the Clean Water Act as well as violations of worker and traffic safety procedures. Furthermore, the FOIA request also sought to document actions taken against Mr. Daily, who had raised concerns to his supervisors regarding such violations.

*(1) Disclosure of Requested FOIA Documents Contributes to the Public's Understanding*

To qualify for a fee waiver under FOIA, disclosure of the requested documents should contribute to the public's understanding of government operations and activities. Factors that courts consider include whether the contents of the requested records are meaningfully informative and have a logical connection to government operations or activities; and whether the disclosure will contribute to the understanding of a reasonably broad audience of people interested in subject. Forest Guardians, 416 F.3d at 1179. In Forest Guardians, the court held that the criteria for contribution to public understanding was met when it was shown that the requested records on the BLM's process for making policy decisions on land management and usage of public funds was important to the public's understanding of the BLM. Id. at 1179.

Likewise, the documents under this FOIA request contain information on Army Corps operations and activities that can affect how environmental and safety regulations are enforced in natural disaster recovery efforts, as well as possible implications under the Clean Water Act. Disclosing this information is necessary to determine the appropriateness of the Army Corps' conduct in ensuring not only the safety of its employees, contractors, and the general public, but also the protection of water quality throughout its recovery effort. In addition, clarifying how the Army Corps proceeds with its decision-making in this particular recovery effort may assist the public understanding on how the Army Corps will address environmental and safety concerns in future recovery efforts.

Furthermore, the identity, vocation, qualifications, and expertise of the requestor in relation to the requested information; and the ability and intention of the requestor to disseminate the information to public, are also evaluated by the courts to determine whether they satisfy the contribution to public understanding criteria for fee waiver eligibility under FOIA. Forest Guardians, 416 F.3d at 1179. Requestors with demonstrated ability and intent to disseminate the information, and whose mission and goals are related to the records in question, will usually be held to meet the public understanding criterion by the courts. See Id. at 1180 (non-profit organization that publishes an online newsletter with distribution to more than 2,500 people and expressed intent to establish a website with information obtained from the BLM shows that information contributes to public understanding); Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1314 (FOIA requirements met when purpose of non-profit organization is to provide the public with information exposing governmental activities contrary to law; also describes nine ways in which organization communicates collected information to public, and explains how and to whom it will disseminate the information).

Similarly, PEER has the capability and intent to disseminate the information from this FOIA request to the general public. As indicated in our March 7, 2007 correspondence, PEER's means of communication to the public include postings on the PEER website, press releases to the media, and publication in the PEER newsletter – methods which generate an average of 1.5 mainstream news articles per day. Through these numerous channels, PEER can reach a broad audience of people interested in these issues, and can distribute information from the FOIA document request as appropriate. Moreover, PEER's mission and goals in upholding the public trust through responsible management of the nation's resources and supporting professional

4

against him for voicing his concerns. Retaliation operates against the public interest, by hindering employees like Mr. Daily from implementing the environmental and safety protocols that have been put in place for the public benefit. Thus, disclosure of such information is significant to the public's understanding not only of how governmental entities like the Army Corps work, but also of how their activities can affect the public at large. If the documents in fact show that there was no environmental damage from the Corps' operations, that information would also be in the public interest.

### C.    Disclosure of the FOIA Documents Does Not Serve a Commercial Interest of PEER

As indicated earlier, PEER is a non-profit organization committed to responsible management of the nation's resources, and works to support professional integrity within the governmental agencies focused on land management and pollution control. The information that PEER is requesting under FOIA is not for commercial purposes, as it is not related to commerce, trade or profit. Rather, it is information that would have a significant contribution to the public's understanding, specifically of the environmental and safety protocols that should be enforced in the event of natural disasters like Hurricane Katrina, and the importance of proscribing retaliation against employees charged with enforcing these protocols to protect the public. To that extent, PEER's document request under FOIA is not in a commercial interest.

Consequently, for all of the reasons set forth above, PEER maintains that its request for a fee waiver has been improperly denied, and is entitled to receive the waiver for this FOIA request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

I look forward to the timely resolution of this appeal.


Very truly yours,

Paula Dinerstein/
Senior Counsel


Jacqueline Calahong/
Law Clerk


Encl.
cc: Client

6

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Public Employees for Environmental Responsibility (PEER)  *llocsl* | United States Army Corps of Engineers, Vicksburg District |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

A

Paula Dinerstein,
Public Employees for Environmental Responsibility
2000 P Street, N.W. Suite 240
Washington, D.C. 20036

Case: 1:08-cv-01330
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 8/1/2008
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◎ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

3

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ◎ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◎ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Freedom of Information Act, 5 U.S.C. 552. Failure to grant fee waiver and produce records in response to FOIA request.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ $0    Check YES only if demanded in complaint    **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE August 1, 2008    SIGNATURE OF ATTORNEY OF RECORD *Paula Dinerstein*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.